UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
-SOUTHERN DIVISION-

| | |
|---|---|
| TRAVIS SANTELLE BURTON,<br>Plaintiff<br><br>vs.<br><br>HEIDI WASHINGTON in her official capacity as Director of the Michigan Department of Corrections; UNKNOWN STOMP in his individual capacity; UNKNOWN SERRITOS in his individual capacity;<br>Defendants | Case No. _________________<br><br>There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint. |

Andrew Sullivan (P84261)
Community Law Office
1415 Bagley St. Suite 2,
Detroit, Michigan 48216
(313) 391-1141
andrew@communitylawoffice.org

## COMPLAINT AND JURY DEMAND

"[K]nowingly subjecting a prisoner to a circumstance where they could be sexually assaulted, and raped, is cruel and unusual punishment, clearly, under the eighth amendment to the Constitution."

- Senator Jeff Sessions[1]

1. Michigan Department of Corrections Director Heidi Washington maintains policies inconsistent with the letter and spirit of Congress's Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq.

2. Director Washington's policies prevent and discourage internal investigations into instances of guards sexually abusing prisoners. Director Washington instituted these policies

[1] Congressional Record, Senate, July 28, 2003, 149 Cong. Rec. S10032–S10033.

with intent to conceal the true number of sexual abuses occurring inside the Michigan Department of Corrections (MDOC) in reports Defendant Director Washington provides to the Department of Justice pursuant to PREA.

3. Plaintiff Travis Burton suffered abuses by Director Washington's staff as a direct result of Director Washington's policies. Mr. Burton now seeks interventions from this Court as follows:

**JURISDICTION AND VENUE**

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1331 (federal question).

5. As Plaintiff Travis Burton's claims stem from ongoing violations of federal law, and as Plaintiff Travis Burton seeks remedy for prospective harms resulting directly from those ongoing violations, his claims are not barred by sovereign immunity. *Ex Parte Young*, 209 U.S. 123 (1908).

6. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§1983 and 1988, and Fed. R. Civ. P. 57.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b), since a substantial part of the events or omissions giving rise to the claim occurred in this district.

8. Plaintiffs further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## PARTIES

9. Plaintiff Travis Burton is a 47-year-old United States citizen and a resident of the State of Michigan. Mr. Burton is presently incarcerated by the State of Michigan through it's Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility in Muskegon Heights. At times relevant to this complaint Mr. Burton was incarcerated at different MDOC facilities, but always under the authority of Director Washington and her policies.

10. Defendant Heidi Washington is the Director of ("MDOC") and is responsible for the overall operations, policies, customs, and directives of MDOC, including those customs giving rise to ongoing violations of Mr. Burton's rights. Defendant Washington has the responsibility, authority, and ability to remedy current and future illegal actions at MDOC facilities which continue to harm Mr. Burton. Defendant Washington has final authority to establish department policies concerning the training of PREA investigators and discipline of staff found to sexually assault, intimidate, or threaten prisoners with retaliation. Defendant Washington is also responsible for creating and maintaining records on behalf of the Department of Justice pursuant to the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq. Defendant Washington is sued in her official capacities.

11. At all times relevant to this complaint Defendant Unknown Stomp was employed by Defendant Director Washington to enforce her unwritten policies within the Michigan Department of Corrections (MDOC) and thusly operated with the authority of Director Washington.

12. At all times relevant to this complaint Defendant Unknown Serritos was also employed by Defendant Director Washington to enforce her unwritten policies within the

Michigan Department of Corrections (MDOC) and thusly operated with the authority of Defendant Washington.

## RELEVANT FACTS

13. On April 19, 2025, at the Bellemy Creek Correctional Facility (IBC), Defendant Stomp and six other MDOC staff removed Mr. Burton from his cell. Defendant Stomp then ordered Mr. Burton into a hallway, restrained Mr. Burton with handcuffs, and in sight of other prisoners, removed Mr. Burton's pants and underwear, instructed Mr. Burton to spread his legs, and groped Mr. Burton's penis and testicles.

14. Sergeant Stomp mischaracterized his assault of Mr. Burton a "strip search" however the altercation violated MDOC's written regulations governing strip searches as—among other cruelties— it was conducted in public rather than in an approved area.

15. On April 19, 2025, Mr. Burton requested to speak with a lieutenant or captain regarding Sergeant Stomp's violations of Mr. Burton's privacy and bodily autonomy. Mr. Burton also requested body-worn camera and surveillance camera footage depicting the incident.

16. Later on April 19, 2025, after Mr. Burton's demand for surveillance footage, Defendant Sergeant Stomp, Officer Anderson, and Officer Kowaleiwcz went to Mr. Burton's cell and destroyed Mr. Burton's personal property in an effort to intimidate him and deter him from filing any grievance.

17. On April 21, 2025, Mr. Burton submitted a Prisoner Grievance Form to the IBC Grievance Coordinator. Mr. Burton provided in part "I was sexually abused and degraded by Sergeant Stomp," "the search policy was violated," and "I would like PREA done."

18. Pursuant to Defendant Washington's policies, IBC Warden Macauley assigned Defendant Serritos to investigate Mr. Burton's PREA complaint knowing that Defendant Serritos would conduct a superficial investigation.

19. As a matter of official or unofficial policy, Defendant Washington trains PREA investigators including Defendant Serritos to conduct superficial investigations of PREA complaints with full knowledge that this policy allows MDOC staff to sexually assault prisoners without recourse. Defendant Washington is deliberately indifferent to this danger. Defendant Washington's policy is a moving force behind both Defendant Stomp's sexual abuse and defendants' subsequent retaliation against Mr. Burton.

20. As a direct result of Defendant Washington's policies discrediting honest complaints of MDOC staff sexually abusing prisoners, in the period from November 2024 to November 2025 the Bellamy Creek facility closed 21 staff-on-inmate sexual abuse investigations as "unfounded," another 28 as "unsubstantiated," and only 1 as "substantiated." This data represents both the prevalence of abuse by MDOC staff against prisoners and systemic ineffectiveness of investigations into those abuses.

21. On information and belief, pursuant to Defendant Washington's policies, Defendant Serritos did not review all available surveillance video relevant and necessary to a thorough investigation of Defendant Stomp's abuse.

22. On information and belief, pursuant to Defendant Washington's policies, Defendant Serritos did not interview all eyewitnesses present for Defendant Stomp's assault of Mr. Burton.

23. Bellamy Creek officers, including Defendant Stomp and Defendant Serritos, denied Mr. Burton access to necessary paperwork to file grievances and appeal denial of

grievances regarding Sergeant Stomp, Officer Anderson, and Officer Kowaleiwcz destroying Mr. Burton's personal property.

24. On May 2, 2025, Defendant Officer Silvernail chained Mr. Burton to a wall for two hours after Mr. Buron's video visit his family. Mr. Burton requested to speak to shift command, to which Defendant Silverman replied, "lay down nigger." Mr. Burton filed a grievance regarding this incident.

25. On information and belief, IBC Warden Matt Macauley assigned Defendant Stomp to investigate Mr. Burton's claims against Officer Silvernail, despite Defendant Stomp being actively investigated for sexually assaulting Mr. Burton.

26. Defendants transferred Mr. Burton from IBC to the Macomb Correctional Center ("MRF") during the pendency of the PREA investigation contrary to Policy Directive 04.04.110 Paragraph EEE.

27. Defendants transferred Mr. Burton shortly before a scheduled PREA audit of the IBC facility in November 2025. Defendants transferred Mr. Burton to prevent the PREA auditor from interviewing Mr. Burton.

28. On information and belief, Defendant Washington maintains an unwritten policy (contrary to the written Policy Directive 04.04.110 Paragraph EEE) of transferring inmates with recent or ongoing PREA investigations to avoid those inmates being available for interviews with PREA auditors.

29. Defendant Serritos never provided Mr. Burton with access to copies of information gathered during investigation. Defendant Serritos deprived Mr. Burton of this access, pursuant to trainings endorsed by Defendant Washington, with a purpose to inhibit Mr.

Burton's ability to challenge the results and findings of Defendant Serritos's superficial investigation.

30. On September 16, 2025, at the conclusion of Defendant Serritos's superficial PREA investigation, Defendant Serritos accused Mr. Burton of having fabricated the claims against Defendant Stomp and imposed a 15-day Loss of Privileges sanction against Mr. Burton.

31. On September 27, 2025 The Community Law Office PLLC submitted a FOIA request to MDOC on behalf of Mr. Burton requesting "All MDOC records regarding the investigation and closure of Travis Burton's 4/21/25 PREA complaint."

32. On October 6, 2025, MDOC FOIA Coordinator Andrew Phelps sent a denial letter to the Community Law Office PLLC asserting "Requested PREA records are exempt from disclosure under 13(1)(a) and (c)."

33. On October 27, 2025, the Community Law Office PLLC submitted an appeal to MDOC asking for reconsideration of their denial. The Community Law Office PLLC explained "(1) the videos can be censored… and (2) providing the videos to Mr. Burton's attorney at Mr. Burton's request is not 'unwarranted.'" The Community Law Office PLLC wrote further, "Your denial provides no explanation for how disclosure of officer reports and logbooks prejudices your ability to maintain security."

34. On November 12, 2025, Director Heidi Washington sent The Community Law Office PLLC a letter upholding the FOIA disclosure denial. Defendant Director Washington wrote "PREA records… are exempt from disclosure… because they often contain information of a personal nature, the release of which would constitution a clearly unwarranted invasion of an individual's privacy… Additionally, PREA records are exempt… because their disclosure could prejudice the Department's ability to maintain the physical security of custodial institutions."

Defendant Washington asserts these FOIA exemptions without providing any particularized explanation unique to Mr. Burton's records (offering only generic claims that records often contain personal information or could prejudice physical security).

**Count I**
**Defendant's policy of encouraging retaliation violates Mr. Burton's First Amendment rights**
**42 U.S.C. § 1983**
**Against Defendant Heidi Washington in her official capacity**
**Seeking injunctive relief only**

35. Mr. Burton incorporates all preceding paragraphs as if fully restated here.

36. Mr. Burton's grievances and complaints reporting sexual abuse by Defendant Stump were acts of speech protected by the First Amendment.

37. Defendant Stomp, Officer Anderson, and Officer Kowaleiwcz destroyed Mr. Burton's personal property on April 19, 2025, after learning of Mr. Burton's complaints against Defendant Stomp, with the intention to intimidate Mr. Burton into dropping his complaints and requests for surveillance footage.

38. Defendant Officer Silvernail's actions on May 2, 2025, chaining Mr. Burton to a wall for two hours after Mr. Buron's video visit his family and referring to Mr. Burton by a derogatory slur, were also motivated by a design to intimidate Mr. Burton into dropping his complaints against Defendant Stump.

39. The retaliatory actions by Defendant Stomp, Officer Anderson, Officer Kowaleiwcz, and Defendant Silvernail, are the foreseen and expected results of policy choices by Defendant Washington in her effort to conceal sexual abuses at the Michigan Department of Corrections. These policy choices include:

a. A policy of transferring prisoners who are victims of sexual abuse by MDOC staff; transferring those prisoners away from facilities scheduled for PREA audits to prevent auditors from interviewing the sexually abused prisoners.

b. A policy of training MDOC wardens and PREA coordinators to omit allegations of retaliation against victimized prisoners in forms designed to document retaliation.

c. A policy of training MDOC wardens and PREA coordinators to avoid reviewing video surveillance evidence in the course of their PREA investigations, with a purpose to avoid applicability of Due Process requirements which would otherwise compel MDOC to preserve the surveillance video evidence.

d. A policy of training MDOC wardens and PREA coordinators to avoid interviewing eyewitnesses in the course of their PREA investigations, with a purpose to avoid recording those witness statements or including them in documents audited by PREA auditors.

e. A policy of wholly denying FOIA requests by attorneys seeking copies of PREA investigations.

40. Defendant Washington maintains these policies with an expectation that the policies allow Defendant Washington's staff to retaliate against prisoners who report sexual abuse thereby discouraging victims from reporting the abuses they suffer at the hands of Defendant Washington's staff.

41. Defendant Stomp, Officer Anderson, Officer Kowaleiwcz, and Defendant Silvernail retaliated against Mr. Burton with the endorsement of Defendant Washington's policies, and in furtherance of Defendant Washington's policy goal of deterring Mr. Burton from moving forward with his report of sexual abuse.

42. Mr. Burton continues to reside in a Michigan Department of Corrections facility, under the jurisdiction of policies of Director Washington, and thus continues to fear retaliation motivated to suppress his protected speech.

43. Plaintiff seeks declaratory and injunctive relief from this court to protect him prospectively from the ongoing harm of defendant Washington's policies.

**Count II**
**Defendant's policy of removing accountability for staff who sexually abuse prisoners despite known risks violates Mr. Burton's Eighth Amendment rights**
**42 U.S.C. § 1983**
**Against Defendant Heidi Washington**
**Seeking injunctive relief only**

44. Mr. Burton incorporates all preceding paragraphs as if fully restated here.

45. Defendant Washington's policy choices create unreasonable risks to Mr. Burton's safety inside any MDOC facility. Defendant Washington's removal of accountability for staff who sexually abuse inmates effectively endorses that abuse and produces the foreseeable result of increasing that abuse.

46. Living under the constant threat of MDOC staff restraining Mr. Burton, removing his pants and underwear, and groping Mr. Burton's penis and testicles for an audience of other prisoners, is a serious and objective deprivation of the minimal civilized measure of life's necessities.

47. In maintenance of the aforementioned policies, Defendant Washington continues to act with deliberate indifference to the harms she causes Mr. Burton. Defendant Washington is aware of rampant sexual abuse occurring at the hands of her staff, yet chooses to pursue policies which prevent accountability for those abuses and instead encourage their repetition.

48. Plaintiff seeks declaratory and injunctive relief from this court to protect him prospectively from the ongoing harm of defendant Washington's policies.

**Count III**
**Defendant Stomp's search violated Mr. Burton's Fourth Amendment rights**
**42 U.S.C. § 1983**
**Against Defendant Stomp in his personal capacity**

49. Mr. Burton incorporates all preceding paragraphs as if fully restated here.

50. Despite being a prisoner, Mr. Burton maintains a legitimate expectation of privacy in his genitals; that MDOC will not search or fondle his genitals without articulable suspicion and that any staff search of his genitals will occur in private, limiting exposure of his genitals to other prisoners. Mr. Burton's privacy rights in this regard are clearly established, as they are endorsed by MDOC policy directive 04.04.110 (providing "All strip searches shall be completed in an area where only the staff member(s) conducting the search can see the individual being searched.")

51. Defendant Stomp's strip search of Mr. Burton's genitals on April 19, 2025 constituted a "search" within the meaning of the Fourth Amendment, as it intruded on Mr. Burton's reasonable expectation of privacy.

52. Defendant Stomp had no articulable suspicion to justify his public strip search of Mr. Burton, and thus Defendant Stomp's strip search was unreasonable and violative of Mr. Burton's state and federal constitutional rights.

53. As a direct and proximate result of Defendant Stomp's unlawful actions, Mr. Burton sustained, and will sustain in the future, injuries and damages including but not limited to the following:

a. Violation of rights guaranteed by the Fourth Amendment to the United States Constitution;

b. Violation of rights guaranteed by the Michigan Constitution, Article 1 § 11;

c. Economic damages, including, but not limited to, future medical expenses for therapy;

d. Noneconomic damages, including but not limited to, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

**Count IV**

**Defendant Serritos's retaliation against Mr. Burton violated First Amendment protections**
**42 U.S.C. § 1983**
**Against Defendant Serritos in his personal capacity**

54. Mr. Burton incorporates all preceding paragraphs as if fully restated here.

55. Mr. Burton's PREA complaint against Defendant Stomp constituted speech protected by the First Amendment to the United States Constitution and Article 1 § 5 of the Michigan Constitution.

56. Defendant Serritos's ineffective investigation and accusation of misconduct against Mr. Burton were each adverse actions purposed to deter Mr. Burton from proceeding with any litigation against Defendant Stomp.

57. Deterring Mr. Burton's exercise of protected speech was the primary factor motivating Defendant Serritos's adverse actions.

58. Defendant Serritos's ineffective investigation and accusation of misconduct would deter any prisoner of ordinary firmness from reporting sexual abuse, understanding that ensuing investigations will never result in accountability for the abuser but will rather result in greater vulnerability for the victim.

59. As a direct and proximate result of Defendant Serritos's unlawful actions, Mr. Burton sustained, and will sustain in the future, injuries and damages including but not limited to the following:

a. Violation of rights guaranteed by the First Amendment to the United States Constitution;

b. Violation of rights guaranteed by the Michigan Constitution, Article 1 § 5;

c. Economic damages, including, but not limited to, future medical expenses for therapy;

d. Noneconomic damages, including but not limited to, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

WHEREFORE, Plaintiffs Travis Burton seeks judgment against Defendants including: (1) declaration of violations of Mr. Burton's rights by defendants, (2) Injunctive relief to prevent defendants' unlawful conduct, and (3) damages in an amount fair, just, and equitable for the injuries wrongfully sustained, including but not limited to economic and noneconomic damages, past and future physical and emotional distress, mental anguish, humiliation and embarrassment, medical expenses, punitive damages, and attorneys fees as allowed in law and equity.

Respectfully submitted,

Date: August 17, 2026

COMMUNITY LAW OFFICE

By: */s/ Andrew Sullivan*
Andrew Sullivan (P84261)
*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff Travis Burton demands a trial by jury in the above-captioned matter.

Respectfully submitted,

Date: August 17, 2026

COMMUNITY LAW OFFICE

By: */s/ Andrew Sullivan*
Andrew Sullivan (P84261)
*Attorney for Plaintiff*